Our third case for argument this morning is Koger v. Cook County. Ms. Nicholas. Good morning. May it please the court. This case raises questions of critical importance about the limitations on correctional institutions' ability to curtail detainees' constitutional rights. Cook County Jail's Inmate Information Handbook sets forth that detainees are prohibited from possessing more than three total books and or magazines that are not deemed to be religious. But the evidence in this case reveals that the jail does not use this policy to promote the safety and sanitation needs that it has put forth to justify it. Rather, the jail has given correctional personnel unfettered discretion to enforce or not enforce the policy whenever and however they see fit. And this leads to arbitrary and standardless seizure and destruction of detainees' reading materials. How does this differ from any statute or rule which is enforced or not by the prosecutors? We call that prosecutorial discretion, but no one thinks that makes the law unconstitutional. There is discretion, right? No one can enforce everything to the letter all the time. That's a mundane observation. I just don't understand what that has to do with a constitutional claim. Well, here the jail has said that the policy is justified under Turner for two principal reasons. One, that it can be used as a behavioral management or behavioral modification tool. That is, the jail doesn't enforce the policy to promote good behavior or it enforces the policy to punish bad behavior. And the reason for felon in possession laws is to prevent felons from having guns. But it doesn't mean that prosecutors prosecute every violation. Prosecutors throw most cases back. I just don't understand what that has to do with a constitutional claim. The issue here is that everyone who is detained at the jail, including Mr. Coger, is given the impression that books are legitimate pieces of personal property. They are. And they're told you can't have more than three. Here the inconsistency invites abuse. Everyone who is detained in the jail, according to their own 30 v. 6 witness, the vast majority, up to 95% of people, have more than three books or magazines. But then the evidence is that at the will of correctional officials, those books can be seized and destroyed. And the problem with that under Turner is that... Not at the will of corrections officials. If you have more than the allowed number, they can be seized. There's no contention in this case that he had three or fewer. It's agreed he had more than three. I think you might be best advised to move to questions like, what do they have to do about the excess? Right. So I think that is the primary reason that this court remanded the case for the first time. Was for a determination of what the policy was with regard to what happens to books that are seized, pursuant to the jail's policy. And that was clarified when we were sent back down. And the testimony of the jail's own 30 v. 6 witness was that the books are destroyed, most likely thrown in the garbage. And the district court deemed that fact to be irrelevant to a determination of whether the policy was constitutionally permissible. And that was an error. One, because this court already instructed the lower court that that was a material question. But more broadly, it goes to the policy's legitimacy under Turner. Namely, that this is a greatly exaggerated response to the legitimate security concerns that the jail has put forth to justify the policy. There is no reason given why the books that are seized from detainees should be treated the same as the jail treats weapons, drugs, or other forms of contraband. So it was an error for the district court to deem evidence of what happens to the plaintiff's books as irrelevant to the determination here. And I think where the district court really went wrong... The district court said, among other things, that no due process argument had been made. This is basically a takings argument, which is a form of due process argument. Was a due process argument raised in the district court? The plaintiff did not plead a due process count in their complaint. I'm not asking about the complaint. I'm asking about the whole process of litigation. Yes, I think that the ultimate disposition of what happened to plaintiff's books is deeply intertwined with the policy... I'm not asking whether something is deeply intertwined with something else. I'm asking a concrete question. Was a due process argument made in the district court? We did not initially characterize the problem with this policy as... I'm not asking about initially, right? The complaint does not make such an argument. Eventually, there comes a motion for summary judgment. In response to the motion for summary judgment, did the plaintiff say, no, deny summary judgment because I've got a due process claim, and here it is? That was not the argument that was made below. However, defendants, the district court, and this court all treated the jail's policy as involving due process concerns. In fact, that was the basis for the district court's first summary judgment decision was, as this court probably recalls, that the plaintiff's claim for the destruction of his books was barred by the Parrott-Hudson doctrine. And this court reversed that decision. Below, the arguments were made about... But if after we reverse a judgment and say, think about due process, the plaintiff does not make a due process argument, that's a standard forfeiture. Well, on remand, we certainly did raise that. Then why did you answer my question by saying it was not raised in the district court? I apologize, Your Honor. So in the first round of summary judgment briefing, this was not brought up. After this court highlighted... After the remand, it was brought up. Yes, absolutely. And we asked the court for leave to amend the complaint, if she thought that was necessary, for us to bring forth a due process claim about the destruction of the plaintiff's books. That was denied. But then we also argued to the court that the due process concerns should be taken into account on remand because what happens to the... how the books are disposed of is simply part and parcel of the policy that has been challenged here. And the due process considerations are intertwined with the First Amendment considerations that the plaintiff had brought up. Was Cogar in prison during all this? When did he get out? Mr. Cogar got out only a couple of weeks after all of his books were seized. So for the first several months that he was in the Cook County Jail, he was regularly permitted to possess more than three books. However, a few weeks before his release, the policy was enforced throughout the deck that he was housed on, and his books were seized and disposed of, and he never received them back. But now at this point, he is out of prison, or out of the Cook County Jail, and he seeks a declaratory judgment that the policy is unconstitutional and damages for the loss of his First Amendment freedoms and his books as a result of the policy's application to him. So yes, to Judge Easterbrook's question, the due process issues that this court highlighted were brought up with the district court on remand, and the district court drew a very stark line finding that we could not bring forth those arguments or that legal characterization of the policy as it had been applied to the plaintiff, and that the disposition of the books was irrelevant to her analysis of the summary judgment motion. And that was in direct contradiction of what this court had directed the district court to do on remand. So it's the plaintiff's position that whether you see this as a First Amendment Turner test question or a due process question, the destruction of the books really calls into question the constitutionality of the policy as it was applied to Mr. Coger and to other detainees at the jail, up to and including today. So with the court's permission, I'll reserve the remainder of my time for rebuttal. Thank you. Certainly, Ms. Nicholas. Mr. Power. May it please the court. The question before this court is whether a prisoner housed in Cook County Jail has a right pursuant to the First Amendment of the U.S. Constitution to possess more than three reading books at the same time. Pursuant to Turner v. Safely? That is a question in this case. And, Your Honor— And not the most interesting one. Your Honor, we can turn to the 14th Amendment question. And the fact is that following remand— I would begin by stating that, as counsel admitted, the 14th Amendment was never raised in the complaint. It was not raised in their own motion for summary judgment. It was raised by defendants as a defense in summary judgment, and that is what the case came up with. It was raised by the defendant. It was dismissed initially by the district court on the basis of Peratt v. Taylor, which is an exclusively due process decision. We identified a due process issue to be resolved on remand. Ms. Nicholas says that the due process issue was briefed by the plaintiffs on remand, and the magistrate judge flatly refused to carry out our instructions. Is that normal? There's a step that Ms. Nicholas did not inform the court of, and that was the attempt to file an amended complaint, adding this due process— Who cares about the complaint? The Supreme Court held in many cases, of which Johnson is the most recent, that complaints don't need to plead law. They plead grievances. The grievance is, I had these books and they were taken away from me. What the theories are, whether they're called First Amendment or due process or taking, needn't be in the complaint. Any insistence that the theory be in the complaint, which the magistrate judge said it had to be, is just flatly inconsistent with the decisions of the Supreme Court. So if this is going to be defended, it has to be defended on some other ground. And I would begin by saying that the court denied the— I'm sorry, Your Honor. I begin by saying that while you're correct that legal theories do not need to be pled in complaints, throughout the course of litigation, the plaintiff not only pled the First Amendment claim, but repeatedly denied the First Amendment claim. You do not plead law. You plead grievances. The grievance is, my books were taken away and destroyed. And plaintiff repeatedly affirmatively denied making the due process claim. As to when plaintiff did try to bring that claim into the amended complaint, it was years too late, and the court denied— You don't have to plead law in complaints, and therefore you don't have to amend the complaint to plead law. I don't know how many other ways that proposition can be put. Johnson was a summary reversal of a court of appeals. We don't set ourselves up for summary reversal. It's really straightforward. You need some other argument. And turning to the 14th Amendment claim, in order to make a 14th Amendment claim, plaintiff must first establish that he was denied of a protected— deprived of a protected interest, and second, you turn to the question of what process was due under those circumstances. In this case, the Cook County Jail's handbook clearly defines any books more than three as being contraband. And again, that's what we need to return in this case to being that— They are contraband in the cell. Let's draw a parallel, as I've already done with Ms. Nicholas, to firearms. Somebody who's been convicted of a felony cannot possess firearms. They are firearms in his—they are contraband in his hands. But they're not contraband generally. Does it follow from the fact that the convicted felon can't possess firearms that the police officer who seizes a firearm out of his hands can take it and just put it in a crusher immediately without going through any form of legal process? Your Honor, the contraband policy is not a part of this record. However, the Cook County Jail does have a contraband policy. Would you address my question, please? I asked you what the police officer could do with a firearm seized from somebody who has a felony conviction. You need to answer that question. And, Your Honor, I don't know the answer to that question. I would imagine there would be some— There is an answer to that question in this circuit. We said it's contraband only in his hands. There is still a property interest in them. They can be given away, transferred, sold. The felon can't contain—have actual or constructive possession. But he has a property right in them and could sell them, say, to a dealer who promised not to give them back to him. Why isn't that equally true of books? In this case, Your Honor, plaintiff's own testimony was that he was aware of the rule. He was told the search was coming. I'm not asking about plaintiff's testimony. I'm asking a legal question. Why a principle already established with respect to firearms that are contraband in the hands of Jones but not in the hands of Smith, why that principle doesn't apply to books which are contraband in the cell but not contraband in society at large? That's a legal question, and it can't be answered by pointing to the plaintiff's testimony. And I'm not sure it would, Your Honor. And I think Cook County Jail's policy allows for that, and that's part of what makes the policy constitutional. The suit contends that the policy—that the handbook is silent and that the policy is to just take everything and destroy them. The plaintiff said, I would like to contest that, and the district court said that's not even relevant. It's not even relevant whether they're all destroyed. Well, if the same principle that applies to contraband firearms applies to contraband books, it is certainly relevant. That's why I'm asking the question whether there is some principle of law which would distinguish the book situation from the firearm situation. And two things, Your Honor. First, in this case, detainees are allowed to give away their excess books to other individuals on the tier. They're allowed to mail them home to family and friends. They are allowed to dispose of those excess books. So if they know they're about to go over that three-book limit, they are allowed to get rid of them. There is a process in place for that to happen. You didn't listen to my question. I gave you the case of a felon who is caught red-handed with a firearm in his holster. He hasn't given it away before he was caught. In the actual case in this circuit, the felon had an armory of 52 firearms in his home. He was caught in his home. He hadn't given them away or sold them. We held nonetheless that he has a property interest in him and that he could do that. You can't distinguish a case like that by saying our plaintiff didn't give the books away before the shakedown. That's why I'm trying to figure out whether there is some difference between books and firearms for the purpose of thinking about what the property interest in them might be. Maybe there is no such difference, but we need to decide that in this case. I would offer that the contraband policy at Cook County Jail, in the case of, for example, drugs or items like that found at Cook County Jail, they are bagged up and they are referred for prosecution. Items like books and other items of contraband are treated differently, and a detainee might receive a ticket for it. But I think as plaintiffs themselves cited in their briefing, a detainee cannot have a protected property interest in contraband. I would offer that a prison setting is different. You're not distinguishing guns from firearms. Books are not contraband. They are contraband if in excess of three, if in a cell. Once removed from the cell, they are just books. Just like once guns are taken out of the hands of the convicted felon, they are just guns. They're property. You can't end this case by saying they're contraband in the cell, because if that were an ending, the firearm case had to have come out the other way. That's why I'm asking you to deal with the fact that the firearm case came out the way it did, and to address the question whether books are materially different. Your Honor, and I would say the prison setting makes it a different circumstance, and the fact that there is a process at jail for detainees to file grievances. There is a process to contest takings at the county jail. No, the lawsuit contends that there is no such process, and when the plaintiff wanted to prove that, the magistrate judge said it is irrelevant whether there is such a process. You can't come to the Court of Appeals and say we're right, therefore the plaintiff must be denied his opportunity to show that we're wrong. Litigation doesn't work that way. Your Honor, I think part of the problem, part of why the district court denied the leave to amend the complaint for the third time, was that the opportunity to work those facts up and put those in the record had existed for years during the course of litigation, and plaintiff was not pursuing that theory and did not work up those facts to present those facts that in fact books are simply destroyed. There is some testimony that that's what happened, but likewise there are policies that indicate other things should happen. That's not in the record. Plaintiff did not carry its burden in this case of demonstrating conclusively what happens to books that are taken from detainees. Returning back to the policy itself, looking to the Turner factors, in terms of whether or not a policy is legitimate, pursuant to the First Amendment, which is the claim at issue, the first factor under Turner is whether or not the policy relates to a valid penological interest. The record is complete with instances of books being misused, books and magazines being highly flammable, the federal monitor suggested a numeric limit on the number of books that detainees can have, books and magazines are used to clog toilets and other sanitation equipment, they're used to jam locks, books and magazines create various difficulties in a prison setting, and that's why the policy exists to limit the number of books and magazines detainees can have access to. The second Turner factor looks to whether or not detainees have alternative means of exercising their right. And in this case, they clearly do. The book limit is three books in a cell at a time, and detainees are permitted to obtain more books the very next day, as long as they give away or mail home or send to other people the books they have that would be in excess of that three-book limit. And the policy is clear that detainees, if they know they're about to hit up against that limit, have that ability to get rid of the excess books. The third Turner factor then turns to the impact the accommodation would have on prison administration. And here again, we see that if detainees are permitted to have more books and magazines in their cells, it will take longer to search. It creates more opportunities for contraband like shanks or drugs or other material to be missed and hidden. Therefore, it leaves more opportunity to detainees to injure themselves or the facility itself. And then the fourth Turner factor looks to whether or not this is an exaggerated response. And again, the test under Turner is not whether there is some other alternative that can be laid out. It's not a least restrictive alternative test. The question is whether or not Cook County Jail's response is an exaggerated response to the concern. And Cook County Jail's response of taking books that are more than three and destroying them is not an exaggerated response in this case. The detainees know what the rule is. There's a bright line rule. And the response, they know that they will lose their property if they exceed the number of books that they have in their cell. Plaintiffs have repeatedly called for this volume test that the property bag alone is sufficient. And the property bag alone is not sufficient. The volume, while a good limit and while the volume limit achieves certain ends of limiting the clutter in the cells, the point is that books need to be searched individually page by page. It's not enough to just make sure everything is put away and guards can move on. So the volume limit alone is not sufficient. And again, it's worth noting that plaintiffs have argued throughout that they only want detainees to have a little bit more than what's allowed. And when the detainees should have a little bit more, that becomes a question of line drawing. That becomes a question of reasonableness. And it becomes a question that makes clear that Cook County Jail's policy is not an exaggerated response when plaintiff themselves are only advocating for a little bit more. Plaintiff has the burden of showing that this policy of limiting the number of books and taking away the excess of three and destroying those books is unreasonable. Plaintiff has not met his burden and that the courts have repeatedly advised that courts should defer to the judgment of prison officials and not insert themselves into every single instance of prison administration and defer to the judgment of those prison administrators when they decide what to do with the property in question. If there are no further questions, we ask that you affirm the opinion of the lower court. Thank you. Thank you, Mr. Power. Anything further, Ms. Nicholas? I'd like to address first a few things that counsel said concerning the evidence that was before the district court concerning the disposition of books that were seized pursuant to the jail's policy. Discovery was conducted on this exact point and the jail's own 30B6 representative, Director Marici, was asked during his deposition what is done with books that are seized pursuant to the policy and his testimony was that they are destroyed, thrown in the trash. So the contention that there was not sufficient evidence before the district court to rule on that question just simply isn't true. Second, with regard to defendants' contention that there was some kind of adequate process for a person to contest the seizure of their books, of course the grievance process is useless if your books have already been thrown in the garbage. There is no relief one could get by filing a grievance if the books have already been permanently destroyed. So the contention that there is an adequate process through the grievance process simply doesn't hold up. Turning to defendants' contentions about the Turner test, counsel is right that Turner is a deferential test and this is the rare case where if you defer to what their own witnesses testified to, to what Cook County Jail employees testified to, it supports plaintiff's theory. Their testimony is that this policy is almost never enforced and that the lack of enforcement of the policy has not compromised the security or administration of the jail. In fact, the testimony was that it has caused no problem whatsoever. Even though they recite all of these reasons why books could be a problem, I mean, it's a pretty long list. Yes. And I don't know, I guess maybe that, I don't know whether the district judge got into that or not, saying this, good, bad, or indifferent, or here's what you really should do with the books or something. It just let it, let it be, I think. So I think that the testimony of the jail's officials about the real world on the ground practice and what really happens with regard to books within the jail is more important than their abstract speculation about what might be done or how books might be misused. But their testimony about the real world on the ground practice was that the presence of more than three books per detainee has not caused problems in the jail. And then finally, there are so many exceptions to this rule. Unlimited religious books. Unlimited school or study books. Unlimited legal materials. That really, this rule does not advance the interests that the jail has put forth. At the most, it has a de minimis impact on the number of books that are present in inmate cells. And here, imposing this content-based regulation on secular books only, books that are not deemed to be religious or legal, simply doesn't satisfy the dictates of the Turner test. So based on that, we are asking this court to reverse the decision of the district court and remand for a determination of whether the jail's policy violates plaintiff's constitutional rights. Thank you. Thank you very much, counsel. The case, excuse me, the case is taken under advisement.